# NO. 12-08-00106-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RICKIE DAWSON YORK,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### MEMORANDUM OPINION

Rickie Dawson York appeals his conviction for possession of a controlled substance, for which he was sentenced to imprisonment for sixty years. Appellant raises two issues on appeal. We affirm.

### BACKGROUND

At approximately 3:00 a.m. on October 16, 2007, Bullard police officer Leland Shawn Johnson was driving to Tyler, Texas and passed by a gas station. As he passed, Johnson noticed a car parked on the sidewalk next to the station with its headlights shining into the gas station. Because there had been a recent burglary at that particular gas station, Johnson stopped to investigate. As Johnson approached, he observed that the vehicle's engine was running and that Appellant was sleeping in the driver's seat of the vehicle. Johnson sought to interview Appellant. When Johnson asked Appellant about his present location, Appellant could not readily convey what he was doing and gave the name of a town that was not nearby. Johnson asked Appellant to exit the vehicle and consent to a search of his person. Appellant obliged, and Johnson discovered a quantity of marijuana and methamphetamine in Appellant's right front pants pocket. Subsequently, it was determined that Appellant had provided a false name. Appellant was charged with possession of marijuana, failure to identify, and possession of methamphetamine.

In the misdemeanor trial for failure to identify, Johnson testified that the sole reason he investigated Appellant at the service station was to determine if a burglary had been committed or was then in progress. He further testified that he did not observe Appellant commit a breach of the peace, a public order crime, a felony offense, or an offense under Texas Penal Code, chapter 49. The trial court granted Appellant's motion to suppress and entered a directed verdict.

In Appellant's subsequent trial for possession of methamphetamine, from which the instant appeal arises, Appellant filed a motion to suppress based on various alleged violations of his rights as well as an illegal detention and arrest. Appellant further asserted that the trial court was bound by the misdemeanor court's decision. A hearing was conducted on Appellant's motion to suppress. At the hearing, Johnson testified in supplement to his prior testimony that he was also concerned that someone might be committing the offenses of driving while intoxicated, public intoxication, or criminal trespass. The trial court denied Appellant's motion to suppress, and Appellant later pleaded "guilty." Thereafter, the trial court found Appellant "guilty" as charged and conducted a trial on punishment before a jury. Ultimately, the jury assessed Appellant's punishment at imprisonment for sixty years. The trial court sentenced Appellant accordingly, and this appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court erred by denying his motion to suppress. Specifically, Appellant argues that Johnson (1) lacked reasonable suspicion to conduct the investigatory detention that led to the discovery of the methamphetamine and (2) lacked legal authority to detain or arrest Appellant because he was outside of his jurisdiction.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.–Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of

2

the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds*, *State v. Cullen*, 195 S.W.3d 696, 698–99 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application of law to fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *See Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

In other words, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *See Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *See Kelly*, 204 S.W.3d at 819; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review de novo the trial court's legal ruling unless the implied fact findings supported by the record are also dispositive of the legal ruling. *See Kelly*, 204 S.W.3d at 819.

## Length of Detention and Reasonable Suspicion

To justify an investigative detention, an officer must have reasonable suspicion, based on specific articulable facts that, in light of the officer's experience and general knowledge, lead the officer to a reasonable conclusion that criminal activity is underway and that the detained person is connected with the activity. *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). We must review the totality of the circumstances of each case to see whether the officer had a particular and objective basis for having suspected wrongdoing. *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 273,

122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002)); *see also **Carmouche v. State***, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000). (review under objective standard that disregards any subjective intent of officer making detention and looks solely to whether objective basis for detention exists).  After initiating contact with a defendant, an officer may rely on all of the facts ascertained during the course of such contact to develop articulable facts that would justify a continued detention.  *See **Powell v. State***, 5 S.W.3d 369, 377 (Tex. App.–Texarkana 1999, pet. ref'd).

A detention must last no longer than is necessary to satisfy the purpose thereof. *See **Florida v. Royer***, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983); ***Davis v. State***, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); ***Willis v. State***, 192 S.W.3d 585, 591 (Tex. App.–Tyler 2006, pet. ref'd).  The investigative methods employed should be the least intrusive means available to verify or dispel the officer's suspicion in a short period of time.  ***Sims***, 98 S.W.3d at 295.  There is no rigid time limitation on the detention; the propriety of the detention's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly.  *See **id.***; ***United States v. Sharpe***, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985)).

In the instant case, Appellant concedes that Johnson did not require any level of suspicion to engage in an encounter with him.  *See **Francis v. State***, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996) (encounter is friendly exchange of pleasantries or mutually useful information, where person to whom questions are put remains free to disregard questions and walk away).  Thus, assuming arguendo that the facts before us indicate that Johnson's encounter with Appellant ever became a detention, we will direct our inquiry to whether Johnson had reasonable suspicion to continue his investigation once he observed Appellant asleep in the driver's seat of the vehicle.

Johnson testified that he observed a vehicle parked in front of a closed business. Due to the fact that, in the past, the business had been burglarized, the business was closed, it was late at night, and the vehicle was parked on the sidewalk with its headlights shining into the building, Johnson decided to approach the vehicle.  As Johnson approached, he observed that the vehicle's engine was running and that Appellant appeared to be sleeping or "passed out" in the driver's seat.  Johnson stated that he contacted Appellant, who reacted with surprise.  Johnson further stated that Appellant

was unable to provide him with identification, at which point he asked Appellant to exit the vehicle. Johnson testified that he asked Appellant what he was doing and that Appellant responded that "he was waiting on her . . . by the university." Johnson stated that he asked Appellant where he believed he was and that Appellant advised that he thought he was in Chapel Hill, a town not near Appellant's location. Johnson further stated that he asked Appellant for consent to conduct a search of his person and that Appellant granted him such consent. Johnson testified that as a result of his search, he recovered a baggie of marijuana and several bags of methamphetamine in Appellant's right front pants pocket.

Appellant cites *Klare v. State*, 76 S.W.3d 68 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd) in support of his proposition that Johnson's detention was not based on reasonable suspicion. In *Klare*, the appellant's vehicle was, at 2:30 a.m., parked in front of a convenience store that had previously "had problems with burglary." *Id.* at 71. The arresting officer admitted that the appellant had committed no traffic violations. *See id.* The court of appeals noted that the time of day, a car that is parked in close proximity to a business that is closed for the day, and a given locale that is well known for criminal activity are each factors to be considered in deciding whether reasonable suspicion exists, but are not individually capable of supporting reasonable suspicion. *Id* at 73–75. The court further noted that courts generally require an additional fact or facts particular to the suspect's behavior to justify a suspicion of criminal activity. *Id.* at 75. Such fact or facts include traffic violations, failure to signal, driving through a gas station to avoid a red light, an expired inspection sticker and no seatbelt, a burned out taillight, and speeding. *Id.* Ultimately, the court held that under the facts before it, the officer did not have reasonable suspicion to detain the appellant. *Id.* at 77.

The instant case bears some similarity to the facts in *Klare* since Appellant's vehicle was, during the early morning hours, parked in front of a business that was closed for business and had been recently burgled. However, unlike the facts present in *Klare*, the record in the case at hand contains additional facts that support Johnson's further detention of Appellant.

Here, the record reflects that Appellant's car engine was running and the headlights were shining into the building. From these facts, considered in light of the totality of the circumstances, Johnson could have rationally inferred that Appellant was

attempting to illuminate the interior of this business that had been recently burgled and that he left his engine running to facilitate his flight, if necessary, from that location. In other words, Johnson could have reasonably suspected that Appellant was a getaway driver. Further, when Johnson made inquiries of Appellant, Appellant could not effectively or accurately communicate to Johnson what he was doing or where he was. Appellant's behavior could logically be construed as that of a person who was attempting to a concoct an impromptu story to conceal illicit behavior.

Finally, it is noteworthy that Appellant's vehicle was parked on the sidewalk. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp. 2008) (peace officer who is outside jurisdiction may arrest, without warrant, person who commits offense within officer's presence or view if offense is felony or violation of Texas Penal Code, chapter 42); TEX. PENAL CODE ANN. § 42.03(a)(1) (Vernon 2003) (under Chapter 42, person commits offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly obstructs sidewalk to which public has access). Thus, Johnson was entitled to detain Appellant even though Johnson was outside of his jurisdiction.

Based on the aforementioned facts, which we have considered in light of the totality of the circumstances, we conclude that Johnson possessed one or more objective bases to justify his detention, if any, of Appellant. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress. Appellant's first issue is overruled.

### COLLATERAL ESTOPPEL

In his second issue, Appellant argues that collateral estoppel bars the relitigation of the following factual issues in his trial for possession of a controlled substance: (1) whether Johnson was outside of his jurisdiction and (2) whether Johnson observed an offense or action that would allow him to detain Appellant.

The doctrine of collateral estoppel is embodied within the Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment. *Murphy v. State*, 239 S.W.3d 791, 794 (Tex. Crim. App. 2007) (citing *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 1195, 25 L. Ed. 2d 469 (1970); U.S. CONST. amend. V; U.S. CONST. amend. XIV); *see also State v. Stevens*, 261 S.W.3d 787, 790 (Tex. App.–Houston [14th Dist.] 2008, no pet.). While double jeopardy protects a

6

defendant against a subsequent prosecution for an offense for which the defendant has been acquitted, collateral estoppel deals only with relitigation of specific fact determinations. *Stevens*, 261 S.W.3d at 790. Collateral estoppel means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit relating to the same event or situation." *Id.* (quoting *Ashe*, 397 U.S. at 443, 90 S. Ct. 1194; *Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002)).

To determine whether collateral estoppel bars a subsequent prosecution or permits the prosecution, but bars relitigation of certain specific facts, the reviewing court applies a two step analysis to determine (1) exactly what facts were necessarily decided in the first proceeding, and (2) whether those necessarily decided facts constitute essential elements of the offense in the second trial. *Murphy*, 239 S.W.3d at 795. To satisfy the second part of the analysis, the precise fact litigated in the first prosecution "must also be an essential element of the subsequent offense." *Stevens*, 261 S.W.3d at 790. "Specifically, if the necessarily decided fact litigated in the first prosecution constitutes an essential element framed within the second prosecution's offense, then the 'essential element of the offense' prong is satisfied." *Id.*

In the case at hand, Appellant's subsequent trial concerned charges that he intentionally or knowingly possessed between one and four grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(c) (Vernon Supp. 2009). None of the facts litigated in the suppression hearing pertaining to Appellant's misdemeanor trial concerning the legality of Appellant's detention and arrest are essential elements of the offense at hand. *Id.* Rather, these facts underlie the issue of admissibility of evidence. *See, e.g., State v. Rodriguez*, 11 S.W.3d 314, 318 (Tex. App.–Eastland 1999, no pet.). As such, we conclude that the relitigation of facts pertaining to (1) whether Johnson was outside of his jurisdiction and (2) whether Johnson observed an offense or action that would allow him to detain Appellant are not barred by collateral estoppel because such facts do not constitute essential elements of the offense of possession of methamphetamine. Appellant's second issue is overruled.

## <u>DISPOSITION</u>

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 16, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)